Justin E. Kerner
John D. Sadler (*pro hac vice to be filed*)
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
Telephone: (646) 346-8033
Facsimile: (212) 223-1942
Kernerj@ballardspahr.com
SadlerJ@ballardspahr.com
*Counsel for Plaintiff, Service Finance Company, LLC*

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SERVICE FINANCE COMPANY, LLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**YOU SAVE GREEN INCORPORATED dba YSG SOLAR; and DAVID MAGID**<br><br>**Defendants.** | Case No. 1:23-cv-09447 |

**COMPLAINT**

Plaintiff, Service Finance Company, LLC ("SFC"), through its undersigned counsel, hereby files its Complaint against Defendant You Save Green Incorporated dba YSG Solar, a New York corporation ("YSG"), and its principal, Defendant David Magid ("Magid" and together with YSG, "Defendants"), and in support thereof avers and represents as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. SFC is a Florida limited liability company. None of SFC's members are citizens of New York. The sole member of SFC is Service Finance Holdings, LLC, and the sole member of Service Finance Holdings, LLC is Truist Bank, a banking corporation organized under the laws of and with its principal place of business in North Carolina.

1

2. YSG is a New York corporation with its principal place of business in New York, New York.

3. Upon information and belief, Magid is an individual residing in New York, New York. At all times relevant to this action, Magid was the principal and a manager of YSG.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because: (a) this action is between citizens of different states; and (b) as set forth below, the matter in controversy exceeds $75,000.

5. This Court has personal jurisdiction over Defendants because each is "at home" and subject to the exercise of general jurisdiction in New York. Alternatively, this Court may exercise specific jurisdiction over Defendants because they acted (or failed to act) in a manner giving rise to SFC's claims in New York.

6. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 because: (1) at least one Defendant resides in this district; and (2) a substantial part of the events giving rise to SFC's claims occurred in this district.

## GENERAL ALLEGATIONS

7. YSG is a general contractor previously licensed to do business with the NYC Department of Buildings with contractor id number 606125.

8. On or about May 4, 2020, YSG and SFC entered in to the SFC Master Dealer Agreement (Progress Payments) (the "Master Dealer Agreement"). A true and correct copy of the Master Dealer Agreement is attached hereto as **Exhibit A** and incorporated by reference herein.

9. As a contractor, YSG sells "goods and services including, but not limited to, roofing, remodeling, air conditioning and heating, geothermal and solar goods and services (… the

'Merchandise') to consumers (each a 'Buyer' and collectively, the 'Buyers')." *See* Ex. A, Master Dealer Agreement at First Recital.

11. 10. SFC is in the business of providing financing and related services. *See* Ex. A, Master Dealer Agreement at Second Recital. Pursuant to the Master Dealer Agreement, SFC agreed to provide financing to Buyers purchasing residential contracting services from YSG.

11. Through the Master Dealer Agreement, YSG evidenced its intent to sell Merchandise to Buyers on credit terms, pursuant to a contract with the Buyer that describes the Merchandise and the work required to install it. *See* Ex. A, Master Dealer Agreement at Third Recital.

12. YSG would finance the sale of the Merchandise through execution of a retail installment contract or other evidence of indebtedness, in a form specified by SFC (each an "Instrument"). *See* Ex. A, Master Dealer Agreement at Fourth Recital.

13. SFC and YSG entered into the Master Dealer Agreement so that SFC could purchase the Instruments from YSG under the terms agreed to in the Master Dealer Agreement. *See* Ex. A, Master Dealer Agreement at Fifth Recital.

14. The Parties also agreed that SFC could pay up to fifty percent of the Instrument Price prior to SFC's purchase of the Instrument. *See* Ex. A, Master Dealer Agreement at Sixth Recital.

15. With respect to each Instrument that YSG sold to SFC under the Master Dealer Agreement, YSG represented and warranted to SFC (among other things) that: (a) each Transaction underlying an Instrument represented a bona fide sale and, if applicable, installation of, Merchandise to the Buyer named in the Instrument; (b) that by executing a Certificate of Completion, as defined therein, YSG certified "that the Transaction is complete and that, to the

best of [YSG's] knowledge, the Buyer is satisfied with the work performed by [YSG]; and (c) that "[t]he Transaction evidenced by the Instruments is free from set off or valid counterclaim of any nature including any fraudulent act by [YSG]." Ex. A, Master Dealer Agreement at §§ 1(a) - (c).

16. Moreover, the Master Dealer Agreement provides: "in the event that subsequent to its purchase of an Instrument, SFC shall determine that [YSG] has breached any of the representations or warranties . . . with respect to [the consumer transaction underlying that Instrument], SFC shall be entitled to damages in the amount of the Instrument Price paid by SFC to [YSG] for the Instrument affected by such breach." Ex. A, Master Dealer Agreement at § 4.

17. Upon a breach by YSG entitling SFC to damages, YSG specifically authorized SFC to debit YSG's bank account "for the full amount of the Instrument Price paid to Dealer for the Instrument affected by such breach." Ex. A, Master Dealer Agreement at § 4.

18. The Master Dealer Agreement further provides: "In the event of a dispute between [YSG] and SFC arising out of or in any way related to this Agreement or any transaction contemplated by this Agreement, the prevailing Party shall be entitled to recover from the other Party its costs and other expenses (including, without limitation, reasonable audit and attorneys' fees) incurred in connection with such dispute." Ex. A, Master Dealer Agreement at § 25.

19. YSG entered in to multiple transactions for work and executed Instruments with various Buyers for the purchase and installation of Merchandise.

20. With respect to each transaction, YSG provided SFC with Certificates of Completion certifying that 100% of the work financed by the Instrument had been completed to the complete satisfaction of the Borrower.

21. In reliance on the representations made by YSG in the Certificates of Completion, SFC made twelve separate payments to YSG, totaling $318,749.92.

22. SFC subsequently learned that despite YSG's representations in the Certificates of Completion, the work contracted for by the Buyers had not been completed, and the Buyers were not satisfied.

23. After several months of communications with YSG having ample opportunity to appropriately complete and correct any work due to Buyer, YSG has failed and refused to satisfactorily complete the work.

24. On September 6, 2023, SFC made written demand on YSG for payment in the amount of $318,749.92. *See* Master Dealer Agreement at §§ 4 and 25. A true and correct copy of the demand letter is attached hereto as **Exhibit B** and incorporated by reference herein.

25. To date, YSG has not repaid any portion of the amounts due to SFC.

## COUNT ONE
**(Breach of the Master Dealer Agreement against Defendant YSG)**

26. All preceding Paragraphs are incorporated herein by reference, as though the same were set forth at length.

27. The Master Dealer Agreement is a valid and enforceable contract between SFC and YSG.

28. YSG breached the Master Dealer Agreement by executing a false certificate of completion and certifying that the work had been completed and the customer was satisfied with the work when in fact, the work was not complete. *See* Ex. A, Master Dealer Agreement at § 1(b).

29. SFC has been damaged in an amount of no less than $318,749.92 as a direct and proximate result of YSG's misrepresentations in the Certificate of Completion and its failure to properly complete the work.

30. Pursuant to the plain terms of the Master Dealer Agreement, SFC is entitled to recover $318,749.92 from YSG. *See* Ex. A, Master Dealer Agreement at § 4.

31. SFC also is entitled to recover from YSG all costs and expenses that SFC has incurred in connection with YSG's breach of the representations and warranties concerning the certificates of completion, including attorneys' fees and costs incurred herein. *See* Ex. A, Master Dealer Agreement at § 25.

## COUNT TWO
### (Unjust Enrichment against YSG)

32. All preceding Paragraphs are incorporated herein by reference, as though the same were set forth at length.

33. SFC conferred a benefit on YSG by funding the loan in the amount of $318,749.92.

34. YSG accepted the benefit and wrongfully retained $318,749.92 the value of the transfers from SFC, despite not having fulfilled its obligations under the Master Dealer Agreement.

35. Because the Buyer is authorized to rescind the Instrument under the terms of that agreements, SFC is unable to recover on the Instrument.

36. It would be inequitable to permit YSG to retain the benefit of the monies paid at the expense of SFC.

## COUNT THREE
### (Breach of the Covenant of Good Faith and Fair Dealing against YSG)

37. All preceding Paragraphs are incorporated herein by reference, as though the same were set forth at length.

38. The Master Dealer Agreement is a valid, binding, and enforceable agreement between SFC and YSG.

39. The Master Dealer Agreement is governed by Florida substantive law. Ex. A, Master Dealer Agreement at §§ 16, 20.

40. Florida law implies a duty of good faith and fair dealing into all contracts, including the Master Dealer Agreement.

41. YSG owes a duty of good faith and fair dealing to SCF.

42. By the acts set forth herein, including, but not limited to, YSG's failure to make payments due to SCF under the Master Dealer Agreement, YSG has breached its duty of good faith and fair dealing.

43. As a reasonable and foreseeable consequence of YSG's breach of the duty of good faith and fair dealing, SFC has suffered damages in an amount to be proven at trial, but in any event no less than the amounts due under the Master Dealer Agreement, exclusive of default interest, late fees and reasonable attorneys' fees and costs incurred by SFC in the enforcement of its rights under the Master Dealer Agreement pursuant to the terms thereof.

## COUNT FOUR
### (Fraud against Defendants)

44. All preceding Paragraphs are incorporated herein by reference, as though the same were set forth at length.

45. Defendants knew that the representations in the Certificates of Completion were false when made.

46. Specifically, at the time the Certificates of Completion were submitted to SFC, Defendants had actual knowledge that the work was not complete and that the Buyers were not satisfied with the work.

47. Defendants made the false representations in the Certificates of Completion for the express purpose of causing SFC to make payments on the Instruments to YSG.

48. SFC relied on the false statements and made payment in the amount of $318,749.92 to YSG, in reliance on the statements made in the Certificates of Completion.

49. Had SFC known that the statements in the Certificates of Completion were false, SFC would not have paid the monies to YSG.

50. SFC was injured in the amount of $318,749.92 as a result of its reliance on the false statements in the Certificates of Completion.

## COUNT FIVE
**(Conspiracy to Commit Fraud against Defendants)**

51. All preceding Paragraphs are incorporated herein by reference, as though the same were set forth at length.

52. Defendants agreed to and did include false statements in the Certificates of Completion, representing to SFC that the project was complete where they had either not been started or were not fully performed.

53. YSG's representations in the Certificates of Completion were false and unlawful.

54. Defendants intended for SFC to rely on the Certificates of Completion to its detriment.

55. SFC did rely on the false Certificates of Completion and was damaged in the amount of $318,749.92 plus attorneys' fees and costs incurred herein.

## COUNT SIX
**(Negligent Supervision against Magid)**

56. All preceding Paragraphs are incorporated herein by reference, as though the same were set forth at length.

57. This claim is alleged in the alternative to Counts Four and Five. As a principal and manager of YSG, Magid had a duty to supervise and/or otherwise oversee the work of other YSG employees.

58. Upon information and belief, Magid entrusted management of YSG to another individual ("John Doe"), who assisted in creating the false Certificates of Completion and assisted in taking the actions necessary to transfer the false Certificates of Completion to SFC.

59. Upon information and belief, Magid failed to supervise and/or otherwise oversee John Doe's work. Had Magid properly done so, he (and through him, YSG) would have learned of and prevented the issuance of the false Certificates of Completion.

60. Had Defendants properly supervised John Doe, Defendants also would have been better positioned to repay SFC upon receipt of SFC's demand for repayment of the total purchase price of the Instruments.

61. SFC has been damaged in an amount of no less than $318,749.92 as a direct and proximate result of Magid's failure to properly supervise John Doe.

## COUNT SEVEN
**(Aiding and Abetting Fraud against Defendants)**

62. All preceding Paragraphs are incorporated herein by reference, as though the same were set forth at length.

63. Defendants knew or should have known that the statements made in the Certificates of Completion were false.

64. Defendants falsely completed the Certificates of Completion or willingly allowed another individual to falsify the Certificates of Completion.

65. Defendants failed to inform SFC that the Certificates of Completion were false despite knowing that the Certificates of Completion constituted YSG's certification that the work had been completed under the Master Dealer Agreement.

66. YSG benefited from the fraud because it received $318,749.92 when SFC accepted and processed the Instrument in reliance on the falsified Certificates of Completion.

67. Magid benefited from the fraud as the principal of YSG.

68. Defendants had the opportunity to stop the fraud and failed to act or inform SFC that the statements in the Certificates of Completion were false.

69. But for Defendants' failure to act or participation in submitted the false Certificate of Completion, SFC would not have received those affirmative misrepresentations, and YSG would not have fraudulently obtained $318,749.92 from SFC.

## PRAYER FOR RELIEF

WHEREFORE, SFC prays as follows: (a) an award be entered in favor of SFC and against both YSG and Magid in an amount of not less than $318,749.92; (b) pre- and post-award interest; (c) punitive damages against Magid; (d) SFC's costs and other expenses (including, without limitation, reasonable audit and attorneys' fees) incurred in connection with YSG's and Magid's wrongdoing; and (e) such other relief as the Court deems just and proper.

Dated: October 27, 2023                             BALLARD SPAHR LLP

/s *Justin Kerner*
Justin E. Kerner
John D. Sadler (*pro hac vice to be filed*)
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
Telephone: (646) 346-8033
Facsimile: (212) 223-1942
kernerj@ballardspahr.com
SadlerJ@ballardspahr.com

*Counsel for Plaintiff, Service Finance Company, LLC*

DMFIRM #409705508 v1